IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JASON POINDEXTER,

        Plaintiff,

v.                                              Case No. 3:18-cv-01511

WEST VIRGINIA REGIONAL
JAIL AUTHORITY/DOC;
BETSY JIVIDEN, Commissioner of the
West Virginia Division of Corrections;
WESTERN REGIONAL JAIL;
JOHN DOE, Administrator;
MAJOR BERRY; SGT. DIAMOND; and
CORRECTIONAL OFFICER JARVIS,

        Defendants.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

In April 2019, Plaintiff, Jason Poindexter ("Plaintiff"), filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 37). Pending before the Court are Defendants' Motion for Partial Dismissal, (ECF No. 17), and Defendant West Virginia Division of Corrections' Motion to Dismiss, (ECF No. 19). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons that follow, the undersigned **RECOMMENDS** that the presiding district judge **GRANT** Defendants' Motion for Partial Dismissal, (ECF No. 17); **GRANT** Defendant West Virginia Division of Corrections' Motion to Dismiss, (ECF No. 19);

**DISMISS** the West Virginia Division of Corrections and Rehabilitation as a party to this action; **REMOVE** the West Virginia Regional Jail Authority/DOC from the style of the case; and allow Plaintiff to continue discovery on the remaining claims raised in the amended complaint.

I.  **Relevant Facts and Procedural History**

Plaintiff is a state prisoner currently incarcerated in Huttonsville Correctional Center at Huttonsville, West Virginia. https://apps.wv.gov/OIS/OffenderSearch/DOC (last accessed Nov. 14, 2019). His amended complaint alleges that Defendants Major Berry, Sargent Diamond, and Correctional Officer Jarvis (hereinafter "the defendants") assaulted him three times on September 17, 2018 while he was incarcerated in the Western Regional Jail and Correctional Facility ("WRJ") at Barboursville, West Virginia. (ECF No. 37 at 6). Specifically, Plaintiff asserts that he returned to the WRJ on that date after receiving treatment at St. Mary's Medical Center for epilepsy. (*Id.* at 3). He contends that, upon his return, the defendants took him into the bathroom in the booking area, intentionally removing him from view of the cameras, where they purportedly struck him on the head and continued to strike him even as he crouched on the ground in a defensive position from their blows (*Id.* at 4). Plaintiff states that this "first assault" caused him severe injuries. (*Id.*). In continuation, Plaintiff asserts that a "second assault" occurred in front of Central Control when the defendants "employed excessive force to further increase the severity of damage done." (*Id.*). Finally, Plaintiff asserts that he was escorted to the medical unit to be examined by a nurse when the defendants assaulted him for a third time by using excessive, unreasonable force to put him in a restraint chair, and those actions "further caused severe damage to the Plaintiff." (*Id.* at 5). Plaintiff contends that,

as a result of the foregoing actions, he suffered multiple bruises to his face, neck, chest, back, shoulder, arms; muscle damage; a torn ligament in his shoulder; nausea; diarrhea; vomiting; headaches; and worsening of his epilepsy. (*Id.*).

In addition to suing the defendants that allegedly assaulted him, Plaintiff named as defendants in this action the "WV Regional Jail Authority/DOC;" the WRJ;[1] Betsy Jividen, DOC Commissioner; and Joseph Wood, Administrator of the WRJ. Plaintiff alleges that the defendants were employed by the "Western Regional Jail Authority" when they committed the acts and omissions alleged in the complaint. (*Id.* at 3). Further, Plaintiff states that Administrator Wood knew, or in the exercise of reasonable care and due diligence should have known, that the defendants engaged in a pattern and practice of using excessive force toward inmates, assaulting inmates, displaying deliberate indifference to the inmates' preexisting medical conditions, and recording all inmate telephone calls, including attorney-client privileged communications. (*Id.* at 7). Plaintiff states that despite his knowledge of the defendants' pattern and practice of illegal actions, Administrator Wood failed to investigate the "instances of illegality" and failed to supervise, train, and discipline the correctional officers and staff at the WRJ. (*Id.*). According to Plaintiff, Administrator Wood "operated with a 'hands off' policy" toward the illegal actions of the correctional officers and staff, which, in Plaintiff's view, amounted to "tacit approval" of their actions and encouraged the defendants to violate Plaintiff's constitutional rights with impunity. (*Id.* at 7-8).

In his prayer for relief, Plaintiff seeks monetary compensation, costs of this action,

---

[1] The WRJ and the Western Regional Jail Authority are not legal entities. Rather, the WRJ is a building owned by the State of West Virginia and operated by the Division of Corrections and Rehabilitation ("DOC"). Therefore, the undersigned refers to the legal entity as the DOC in this PF&R.

and he asks the Court to "[m]ove the DOC to expedite [his] parole" and "[m]ove the DOC to properly assess the internal damage done to Plaintiff's shoulder and fully bear the expenses to surgically repair Plaintiff's shoulder." (*Id.* at 9).

Defendants move for dismissal of Plaintiff's claims for injunctive relief. (ECF No. 17). In their supporting memorandum, they argue that the nature of Plaintiff's claim for injunctive relief is unclear, as Plaintiff states he is requesting injunctive relief without stating any grounds or explaining what legal remedy would be sufficient. (ECF No. 18). Therefore, they state that Plaintiff's claims for injunctive relief should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 12(b)(6)). (ECF Nos. 17, 18).

In addition, the DOC seeks dismissal in this case, stating that, as an Agency of the State, it is not a "person" subject to suit under § 1983. (ECF Nos. 19, 20). Therefore, the DOC likewise argues that the claims against it should be dismissed under Fed. R. Civ. P. 12(b)(6).

## II. **Standard of Review**

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (stating to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). Accordingly, the Court will assume that the facts alleged in the amended complaint are true and will draw all reasonable inferences in Plaintiff's favor as the nonmoving party. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of

a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)).

While the Court "take[s] the facts in the light most favorable to the plaintiff, … [the Court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Court are required to liberally construe *pro se* complaints, such as the complaint filed herein. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761,

5

765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. <u>Discussion</u>

Plaintiff's amended complaint is filed pursuant to 42 U.S.C. § 1983, which provides a remedy to parties who are deprived of federally protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a state and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 171-172 (1961), *overruled on other grounds by* 436 U.S. 658.

In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person deprived him or her of a federally protected civil right, privilege or immunity and (2) that the person did so under color of state law. 42 U.S.C. § 1983; *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. *Sullivan,* 526 U.S. at 50.

### A. *Motion to Dismiss Claims for Injunctive Relief*

Plaintiff asks the Court to "[m]ove the DOC to expedite [his] parole" and "[m]ove the DOC to properly assess the internal damage done to Plaintiff's shoulder and fully bear the expenses to surgically repair Plaintiff's shoulder." (ECF No. 37 at 9). Defendants move for dismissal of Plaintiff's claims for injunctive relief, stating that Plaintiff asserts no grounds for such relief or explains what legal remedy would be sufficient. (ECF Nos. 17, 18).

In terms of Plaintiff's request for injunctive relief regarding parole, "the Supreme Court has held that prisoners may challenge the constitutionality of state parole procedures pursuant to § 1983." *Bowling v. Dir., Virginia Dep't of Corr.*, 920 F.3d 192, 196 (4th Cir. 2019) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005)). However, in this case, Plaintiff's amended complaint does not make any allegations regarding the state parole procedures, nor did Plaintiff sue any members of the state parole board. (ECF No. 37). Rather, Plaintiff's amended complaint concerns excessive force that he allegedly suffered in the WRJ, as well as a claim that his jail telephone calls were improperly recorded. (*Id.*). Plaintiff named as defendants the officers that allegedly assaulted him, their superiors, and the DOC. (*Id.*). Therefore, there is no nexus between the allegations in the complaint and Plaintiff's requested relief of expedited parole.

In addition, to the extent that Plaintiff seeks release on parole, he cannot raise any claim under § 1983 that would "necessarily imply" that his actual confinement is improper or illegal. *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994). If Plaintiff seeks to expedite his release on parole, he must file a habeas petition in the appropriate court. *Id.*; *see Deck v. Bills*, No. 5:09CV131, 2013 WL 525608, at *2 (N.D.W. Va. Feb. 12, 2013) (discussing

7

claims involving parole procedures that can be raised under § 1983 and those which are barred by *Heck*); *Gilmore v. Bloom*, No. 2:08CV326, 2008 WL 5272576, at *8 (S.D.W. Va. Dec. 17, 2008) (discussing that *Wilkinson* held that an inmate may initiate a § 1983 action to seek invalidation of "state procedures used to deny parole eligibility and parole suitability," but he may not seek the relief of immediate or early release, which is available only through a writ of habeas corpus).

Next, regarding Plaintiff's request for medical attention, his claim for injunctive relief is moot in this action. The present action concerns constitutional violations that allegedly occurred during Plaintiff's incarceration in the WRJ, a facility in which Plaintiff is no longer incarcerated. If Plaintiff claims that he is not receiving medical attention for a serious medical need in his present place of incarceration, he must file a separate civil action in the appropriate court. *See, e.g., Jones v. Vandevander*, No. 7:09-CV-00055, 2009 WL 4709561, at *3 (W.D. Va. Dec. 8, 2009) ("Finally, in his complaint and in two recent submissions, Jones complains that after his transfer, his medical problems continued to bother him at POCC and that no one will send him to a specialist; he asks for the court's help in obtaining appropriate medical treatment. The report construes Jones' two recent submissions (Dkt. Nos. 35 and 37) as motions to amend to request injunctive relief. Jones does not allege facts indicating that Ms. Vandevander has had any responsibility for his health care since his transfer in October 2008. Therefore, although the court will grant Jones' motions to amend to add a motion for injunctive relief, that motion must be dismissed as moot.") (citing *Magee v. Waters,* 810 F.2d 451 (4th Cir. 1987); *Smith v. Dillman*, No. 7:09-CV-00097, 2010 WL 1444571, at *1 n.3 (W.D. Va. Apr. 9, 2010) ("The court notes that if plaintiff believes that he is still not receiving adequate

medical treatment at Greensville, he may refile his claims against the appropriate defendants in a separate civil rights action in the appropriate court, after he has fully exhausted his administrative remedies at Greensville. The court further notes that, inasmuch as Greensville is located in Greensville County, a § 1983 action against Greensville defendants would be appropriately filed in the U.S. District Court for the Eastern District of Virginia.").

As a prerequisite to the exercise of federal jurisdiction, the complaint before the Court must present an actual case or justiciable controversy. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual … events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation … must continue throughout its existence." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Defendants are correct that "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on

9

the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir.2007).

An exception to the mootness doctrine exists for claims that are "capable of repetition, yet evading review." *Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007). However, "[j]urisdiction on the basis that a dispute is capable of repetition, yet evading review is limited to the exceptional situation in which (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Incumaa*, 507 F.3d at 289 (internal quotation marks and citations omitted).

Plaintiff has provided no indication that he will be transferred back to the WRJ and again be subjected to the same alleged violations. Accordingly, for all of the above reasons, the undersigned **FINDS** that Plaintiff's claims for injunctive relief are not cognizable in this action and respectfully **RECOMMENDS** that the presiding district judge dismiss Plaintiff's claims for injunctive relief.

### B. Motion to Dismiss the DOC

Turning to Plaintiff's claims against the DOC, the Eleventh Amendment to the United States Constitution provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Eleventh Amendment refers only to suits by citizens of other states, the Supreme Court of the United States ("Supreme Court") has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal Court by her own citizens as well as by

citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Eleventh Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

Three narrow exceptions to Eleventh Amendment sovereign immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express. In other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal Court." *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir. 1988); *Price v. W. Virginia Air Nat'l Guard, 130TH Airlift Wing*, No. 2:15-CV-11002, 2016 WL 3094010, at *2–3 (S.D.W. Va. June 1, 2016) (holding that insurance provisions contained in the West Virginia Code provide a limited waiver of the State's sovereign immunity in state courts; however, that waiver does not extend to suits brought against the state in federal court). Historically, the State of West Virginia and its agencies have not waived sovereign immunity in this type of suit, and there is no indication that they are inclined to do so now. *See Kinder v. PrimeCare Med., Inc.,* No.

3:13-cv-31596, 2015 WL 1276748, at *7 (S.D.W. Va. Mar. 19, 2015); *Skaggs v. W. Reg'l Jail*, No. 3:13-CV-03293, 2014 WL 66645, at *5 (S.D.W. Va. Jan. 8, 2014); *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *4 (S.D.W. Va. July 12, 2013); *Thompson v. W. Va. Reg'l Jail/Corr. Auth.*, No. 3:13-1897, 2013 WL 3282931, at *4 (S.D.W. Va. June 27, 2013). Therefore, the waiver exception does not apply here.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 139 F.3d 1426, 1433 (11th Cir. 1998), *aff'd* 528 U.S. 62 (2000)). In *Will v. Mich. Dept. of State Police*, the Supreme Court concluded that Congress did not have the States in mind as potential defendants when it imposed liability under § 1983. *Will*, 491 U.S. 58, 65 (1989). Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual constitutional balance between the States and the Federal Government … unmistakably clear in the language of the statute," the Supreme Court observed that had Congress intended to include States as potential defendants under § 1983, it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and explained that interpreting the language of § 1983 "to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will*, 491 U.S. at 65). Thus, Congress has not abrogated Eleventh Amendment sovereign immunity in the context of a § 1983 action. *See Quern v. Jordan*,

12

440 U.S. 332, 340 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal Court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). However, **a state officer** must be named under this exception and that officer must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id*. Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Because the DOC is an agency **and not a state officer**, the third exception to Eleventh Amendment immunity is inapplicable. *Lee-Thomas*, 666 F.3d at 249 (recognizing that the lawsuit must name a state official as the defendant, not a state agency); *Chafin*, 2013 WL 3716673, at *5 (recognizing same); *see also Thomas v. Nakatani*, 309 F.3d 1203, 1208 (9th Cir. 2002) ("*Ex Parte Young* doctrine creates a

13

fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction."). In sum, since none of the exceptions apply, the undersigned **FINDS** that the DOC is shielded by the Eleventh Amendment's sovereign immunity from liability on Plaintiff's complaint.

Furthermore, as discussed above, a plaintiff must assert that a *person* deprived him of his federally protected civil right, privilege, or immunity under the color of state law in order to state a viable claim under § 1983. 42 U.S.C. § 1983 (emphasis added). In *Will*, the Supreme Court considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of … § 1983." *Will*, 491 U.S. at 60. Examining the language and purpose of the statute, the Supreme Court ultimately concluded that Congress did not intend to subject States to liability for deprivations of civil liberties, when such suits would have been barred by the States' sovereign immunity. *Id*. at 66. The holding in *Will* applied not only to lawsuits against the state itself, but also to suits against "public entities and political subdivisions" that were an "arm or alter ego" of the state. *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quoting *Moor v. Alameda County,* 411 U.S. 693, 717 (1973)).

Accordingly, the Court must consider whether the DOC is an arm or alter ego of the state of West Virginia. If so, then Plaintiff cannot maintain a federal civil rights complaint against the DOC, because § 1983 may only be used to file suit against a person. "In determining if a public entity is an alter ego of the state … Courts have generally looked to the standards announced in cases addressing whether governmental entities are

entitled to Eleventh Amendment immunity as an arm of the state." *Maryland Stadium Auth.*, 407 F.3d at 260. In this case, the query is easily answered as the law is well settled that the DOC is an "arm of the State" of West Virginia and not a "person" under § 1983. *See, e.g., Mitchell v. Janice*, Civil Action No. 1:07-0625, 2009 WL 4666010, *1, n. 3 (S.D.W. Va. 2009) ("[T]he West Virginia Department of Corrections is not a "person" as required by Section 1983"); *Berry v. Rubenstein*, No. 01:07–cv–535, 2008 WL 1899907, at *2 (S.D.W. Va. April 25, 2008) (same); *Rakes v. Rush*, No. 2:09-CV-00018, 2009 WL 2392097, at *7 (S.D.W. Va. Aug. 4, 2009) (same).

Therefore, the undersigned **FINDS** that the DOC, as an arm of the state of West Virginia, is not a "person" subject to liability under § 1983, and the undersigned **RECOMMENDS** that Plaintiff's claims against the DOC be dismissed.

### IV. Proposal and Recommendations

For the reasons set forth above, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' Motion for Partial Dismissal, (ECF No. 17); **GRANT** Defendant West Virginia Division of Corrections' Motion to Dismiss, (ECF No. 19); **DISMISS** the West Virginia Division of Corrections and Rehabilitation as a party to this action; **REMOVE** the West Virginia Regional Jail Authority/DOC from the style of the case; and allow Plaintiff to continue discovery on the remaining claims raised in the amended complaint.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall

have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, Defendants, any counsel of record, and any unrepresented parties.

**FILED:** November 14, 2019

Cheryl A. Eifert
United States Magistrate Judge