IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JASON POINDEXTER**
    **Plaintiff**

   v.

                                  Case No: 3:18-CV-01511

**BETSY JIVIDEN, Commissioner of the**
**West Virginia Division of Corrections:**
**Et al.,**
    **Defendants.**

**MOTION TO COMPEL**

Comes now the Plaintiff, Jason Poindexter, by counsel, Christian J. Riddell, and moves this Honorable Court, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel production of discovery in the above style case.

In support of said motion, Plaintiff avers as follows:

### A.  FACTS

The case at bar involves §1983 claims and negligent training and oversight claims asserted by Plaintiff against the Western Regional Jail ("WRJ") and various correctional officers and administrators of the West Virginia Division of Corrections and Rehabilitation ("DCR"). Plaintiff alleges that on September 17, 2018, in three separate incidents, Plaintiff was assaulted by Correctional Officers Jarvis, Diamond, and Berry when said correctional officers engaged in the use of excessive force against him.

For the majority of this case, Plaintiff acted pro se. However, on January 28, 2020, undersigned counsel noticed his appearance in the case at bar. The next day, January 29, 2020, Plaintiff submitted to opposing counsel Plaintiff's Second Request for Discovery to Betsy Jividen and Plaintiff's Second Request for Discovery to Joseph Wood. Exhibit A. At that same time undersigned also sent to opposing counsel a good faith letter regarding prior discovery responses of Defendant correctional officers, noting his objection to Defendant's refusal to provide any information, through either interrogatories or requests for production, as to prior grievances and associated outcomes for each correctional officer.

Over the next 33 days, Defendants, through counsel, provided responses to Plaintiffs Second Requests for Discovery to Jividen and Wood and also responded to Plaintiff's prior good faith letter.  Once said responses were provided in full, undersigned reviewed said discovery materials, and discovered that Defendants had again refused to provide any information as to prior instances of excessive force at WRJ and DCR, largely on the basis that the material requested was not relevant, not admissible, and that providing information on the same would be unduly burdensome. See Defendants Jividen and Wood's Responses to Plaintiff's Second Request for Discovery, Exhibit B. Specifically, the objections against which Plaintiff is attempting compel responsive disclosures are detailed below.

Plaintiff's Interrogatory 1 to Defendant Jividen reads, in full, as follows:

> *1. For each and every grievance, complaint, and/or report of excessive force brought against Defendants Berry, Diamond, and Jarvis while employed at any facility within the purview or control of the West Virginia Division of Corrections and Rehabilitation ("DOC"), please state:*
>
> *(a) The date the grievance, complaint, and/or report was made;*
> *(b) The identity and current location, if still incarcerated within the DOC system, of the inmate who made the grievance;*

2

> (c) The substantive allegations made in the grievance, complaint, and/or report;
> (d) The disposition of said complaint.

Defendant objected as follows:

> *This Interrogatory is vague, overbroad, and not likely to lead to discoverable information. Defendant further objects to this Request for Rule 404(b) evidence concerning prior bad acts of this Defendant. This Defendant states that grievance forms are not searchable by subject or allegation or any staff member listed therein. An extraordinary number of grievances have been filed by inmates during the time period specified and would make the investigation of this answer overly burdensome, as requiring the review of every single grievance filed during the entire employment of each Defendant.*
>
> *Without waiving these objections, this Defendant has produced all grievances filed by Plaintiff during his time at Western Regional Jail and states that any grievances by other inmates are not relevant and may contain protected information.*

Plaintiff's Interrogatory 4 asks Defendant Jividen to "Please state the total number of excessive force grievances which have been filed by prisoners against the DOC as well as the total number that have been substantiated or where wrongdoing was found to have occurred from five years prior to the filing of Plaintiff's complaint until the present day." Defendants response to this interrogatory was to object in identical, verbatim fashion as its objection to Interrogatory 1.

Plaintiff's Interrogatory 1 to Defendant Wood, nearly identical to Jividen's Interrogatory 4, states, "Please state the total number of excessive force grievances which have been filed by prisoners against the Western Regional Jail ("WRJ") as well as the total number that have been substantiated or where wrongdoing was found to have occurred from five years prior to the filing of Plaintiff's complaint until the present day."

Defendant responded with a similar objection, stating that:

> *This Interrogatory is vague, overbroad, and not likely to lead to discoverable information. Defendant further objects to this Request for Rule 404(b) evidence concerning prior bad acts of this Defendant. Additionally, this Defendant is not in possession of the materials requested and is not authorized to produced them, as he is no longer the Administrator of the Western Regional Jail. Finally, this Defendant states that the grievance forms are not searchable by subject or allegation. An extraordinary number of grievances have been filed by inmates during the time period specified and would make the investigation of this answer overly burdensome.*
>
> *Without waiving these objections, this Defendant has produced all grievances filed by Plaintiff during his time at Western Regional Jail while this Defendant was the administrator at that facility. This Defendant states that any grievances by other inmates are not relevant and may contain protected information.*

Plaintiffs Interrogatory 2 to Defendant Wood read as follows:

> *For each instance where a correctional officer at WRJ has been reprimanded, suspended, terminated, or otherwise disciplined for excessive use of force in the five years preceding Plaintiff's complaint until the present day, please:*
>
> >   a. *Identify the correctional officer so disciplined.*
> >   b. *State the circumstances giving rise to the discipline, including all relevant dates.*
> >   c. *Identify the prisoner who filed the complaint or grievance which precipitated the discipline and state where he is currently housed, if still incarcerated.*

Defendant again responded by objecting, on the basis that:

> *This Interrogatory is vague, overbroad, and not likely to lead to discoverable information. Defendant further objects to this Request for Rule 404(b) evidence concerning prior bad acts of this Defendant. Additionally, this Defendant is not in possession of the materials requested and is not authorized to produced them, as he is no longer the Administrator of the Western Regional Jail. Finally, this Defendant states that the grievance forms are not searchable by subject or allegation. Finally, this Defendant states that disciplinary actions records are not searchable by subject or allegation. A large number of correctional officers have been employed at Western Regional Jail in the past 5 years and would make the investigation of this information overly burdensome.*
>
> *Without waiving these objections, this Defendant has produced the Use of Force Investigation report with regard to the instant incident and states that no disciplinary action was taken against any of these Defendants in conjunction with this incident.*

Each Request for Production at issue herein asked simply for "copies of all documents within the possession of the [WRJ/DOC] which pertain or relate to [the same numbered interrogatory]". In each instance, the Request for Production which corresponded to the above stated interrogatories yielded only a production of Plaintiff's own grievances, and provided nothing whatsoever as to any other inmate or any other correctional officer.

In Response, Plaintiff sent another good faith letter, dated March 25, 2020, to opposing counsel objecting to Defendant Wood's responses to Interrogatories 1 and 2and Interrogatory 2, as well as Requests for Discovery 1 and 2. Similarly, Plaintiff objected to Defendant Jividen's failure to provides responses to Interrogatories 1 and 4, as well as Requests for Discovery 1 and 4. Exhibit C.

In said good faith letter, undersigned, having recently become aware of Local Rules for the Southern District of West Virginia which require that motions to compel be filed within 30 days of the due date for discovery responses (in this case March 3rd), requested that opposing counsel contact him by the end of the week as to whether he would be willing to provide supplementation as to the relevant discovery requests. Undersigned faxed and emailed said letter and then followed up with a phone call that same day to make sure opposing counsel was aware of said letter and to attempt to engage in a verbal resolution as to the outstanding discovery matters. The next day, undersigned received a responsive letter from opposing counsel stating that he could not possibly supplement his answers in the time period demanded. Upon receipt of this letter, undersigned immediately drafted an email to opposing counsel advising that opposing counsel had misunderstood his prior request, and that his good faith letter requested only an *agreement* as to Defendants' *intent* supplement, as opposed to actual supplementation, within the designated time period. Exhibit D. Undersigned further attempted to reach opposing counsel by

5

phone on the 26th, twice more on March 27th, and again on March 30th as to these matters, but in each instance opposing counsel was unavailable. However, undersigned did receive an email from opposing counsel offering a more detailed explanation of the burden presented, but nevertheless standing on his prior objections. Exhibit E. Undersigned responded, advising that he would need to move forward with his motion to compel but was amenable to amicable resolution hereafter and withdrawal of his motion if the same was possible. Exhibit F.

Undersigned now, with the expiration of his timeframe impending under local rules, files the instant Motion to Compel. Undersigned advises this honorable Court that he will continue endeavoring to reach an accommodation with opposing counsel as to the requested discovery and that, should subsequent conversations with opposing counsel result in an agreement, Plaintiff will withdraw the instant motion. However, it is necessary, at this juncture, that this matter be filed into the record so as to preserve Plaintiff's rights in the event that no agreement can be reached.

### B. ARGUMENT

I. DEFENDANT'S OBJECTIONS TO DISCOVERY REQUESTS BASED ON RELEVANCY OR THE RULES OF EVIDENCE ARE ENTIRELY IMPROPER.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> *Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.*

Defendant, in refusing to provide any information as to grievances filed by other inmates at the WRJ or by other DCR prisoners against the named correctional officers, is clearly acting outside

the allowable objections under Rule 26(b)(1). First, this information is all highly relevant to Plaintiff's claims against Defendant's Wood, Jividen, Western Regional Jail and (if Your Honor grants Plaintiff's Motion to Amend) Defendant Sandy insomuch as the information requested is clearly relevant to the question of whether Defendants maintained policies, customs, and patterns which allowed for or encouraged the use of excessive force or, at a minimum, to whether Defendants engaged in negligent training and oversight. "Relevance is not, on its own, a high bar. There may be a mountain of documents and emails that are relevant in some way to the parties' dispute, even though much of it is uninteresting or cumulative." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180 (4th Cir. 2019).

Plaintiffs Amended Complaint, at paragraph 18, states that "Prior to September 17, 2018, Defendant Joseph Wood, Administrator, developed and maintained policies or customs which caused the deprivation of Plaintiff's rights in accordance to the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States." The Amended Complaint states further, at paragraph 19, that:

> *Prior to September 17, 2018, the reasonable policy making officials and Joseph Wood, Defendant Administrator, knew, or in exercise of reasonable care and due diligence should have known, that individual officers of Western Regional Jail had engaged in a pattern and practice of misconduct including, but not limited to, the use of excessive force, assault on inmates, deliberate indifference to pre-existing medical conditions, recording all telephone calls, and other violations of the Constitutional Rights of persons in the custody of Defendant Joseph Wood, Administrator, at Western Regional Jail.*

The Amended Complaint further states, at paragraph 20, that, "Despite the knowledge of the aforesaid pattern and practice of illegality, the Defendant Joseph Wood, Administrator, failed to properly investigate these instances of illegality, and to supervise, train, and discipline the correctional officers and staff at Western Regional Jail." At paragraph 21, the Amended Complaint further states that:

> *Defendant Joseph Wood, Administrator, operated with a "hands off" policy or custom with regard to acts of illegality by correctional officers and staff against jail detainers which encouraged the individual Defendant correctional officers in this case to believe that they could violate the Constitutional Rights of the Plaintiff with impunity and with explicit or tacit approval of the Defendant Joseph Wood, Administrator.*

Obviously, if Plaintiff intends to prove a pattern of intentional or negligent constitutional violations, as the above quoted paragraphs clearly allege, it is imperative that he have access to the relevant information across the population upon which such a pattern of behavior would be executed. It is impossible to prove, for example, that Defendant Wood and other administrators developed policies and customs which caused the deprivation of Plaintiffs 8th amendment right against the use of excessive force without seeing how excessive force grievances were handled generally. It is impossible to prove that Defendants knew or should have known about the pattern and practice of misconduct relating to the use of excessive force if Plaintiff is barred from accessing the same information that would have been available to Defendants regarding the conduct and track record of correctional officers at the time of Plaintiff's injuries. It is impossible to prove that Defendants failed to properly investigate instances of illegal conduct or to properly supervise, train, and discipline violative correctional officers without having access to the discipline records and grievance history of the relevant correctional officers. As such, all the information requested is of the highest order of relevance to Plaintiff's claims against the named defendant administrators and the WRJ itself. Moreover, the requests are all proportional to the needs of the case in that they are reasonably limited in time and scope, as requests for institutional grievance information are limited in time from 5 years prior to Plaintiffs injuries until the present day and requests for correctional officer grievance and discipline history are naturally limited to said officer's time with the WVDCR. Defendants' relevancy and overbroad objections as to these points amount to an attempt to turn Plaintiff's broader claims into isolated

allegations against the named correctional officers, rather than the broader allegations of systemic and patterned misconduct plainly alleged in the Amended Complaint.

Finally, Defendants are completely in error to argue that Rule of Evidence 404(b) somehow protects them from disclosures, as the Rule of Civil Procedure 26(b)(1) explicitly states that "Information within this scope of discovery need not be admissible in evidence to be discoverable." As such, any evidentiary bar to admissibility, such as prior bad acts evidence under Rule 404(b), is not grounds for refusing to produce the information requested.

II. THE REQUESTS ARE PROPORTIONAL BECAUSE THE BALANCE OF FACTORS CLEARLY WEIGH IN FAVOR OF PRODUCTION AND ANY BURDEN ASSOCIATED WITH PRODUCTION IS SOLELY THE FAULT OF DEFENDANTS.

In each of the objected-to discovery requests, Defendants highlight the fact that grievances are not searchable by "subject or allegation or any staff member listed therein," and that, as such, sifting through the grievances represents an undue burden.

As a preliminary matter, Plaintiff finds it appalling and, frankly, suspicious, that in the year 2020 the West Virginia Division of Corrections would not have any way of searching grievances by subject matter (i.e. excessive force) or by correctional officer involved. Plaintiff wonders how they might possibly exercise due diligence and oversight over the use of excessive when they cannot even engage in an efficient search of their own grievance records. Plaintiff suspects that this failure is intentional and designed to frustrate precisely the sort of discovery requests provided herein, and respectfully posits that such behavior should not be rewarded by this Court. However, even giving the WVDCR the benefit of the doubt and assuming that their failure to properly organize grievances is a basic oversight, a proportionality assessment clearly

falls in Plaintiffs favor because there is essentially no other way to get the requested information, which is of the highest importance to Plaintiff's claims, other than to have Defendants produce it.[1]

The parties and the court have a collective responsibility to consider proportionality, and a party may not refuse discovery simply by making a boilerplate objection that the discovery is not proportional. Vallejo v. Amgen, Inc., 903 F.3d 733 (8th Cir. 2018); See also 2015 Advisory Committee Notes. The Rule itself lays out 6 factors to consider in assessing whether the discovery is proportional to the needs of the case. These are:

    i.    The importance of the issues at stake in the litigation;

    ii.    The amount in controversy;

    iii.    The parties' relative access to relevant information;

    iv.    The parties' resources;

    v.    The importance of the discovery in resolving the issues; and

    vi.    Whether the burden or expense of the proposed discovery outweighs the likely benefit.

"Applying the six proportionality factors depends on the informed judgment of the parties and the judge, analyzing the facts and circumstances of each case. The weight or importance of any factor varies depending on the facts and circumstances of each case." *Discovery Proportionality Guidelines and Practice*, 99 Judicature, no 3, Winter 2015, at 47, 53.

---

[1] As an aside, undersigned counsel would, of course, be willing to search the system and/or files himself for relevant grievance information if given access, but expects that such an alternative would be even more objectionable to Defendants as it would grant Plaintiff access to a wider array of information than that which is legitimately relevant to the case at bar.

The first factor, "considering the importance of the issues at stake in the action," ranks ahead of consideration of the "amount in controversy." This premise dates back to the 1983 amendments, where the Rules' drafters noted that this is measured in, "philosophic, social or institutional terms." This recognized that "many cases in public policy spheres, such as employment practices, free speech, and other matters may have importance beyond the monetary amount involved." *See the 1983 Committee Note*. This factor clearly falls in favor of production, as the issues at stake are Constitutional in nature and well beyond simple monetary compensation. A prisoner's 8th amendment right to be free of cruel and unusual punishment, as a general matter, vastly exceeds the monetary value of any individual case, and a state prison systems treatment of its

Nevertheless, the amount in controversy is a significant factor. In *Vesta Corp. v. Amdocs Mgmt.*, 14-cv-01142-HZ, 2017 U.S. Dist. LEXIS 25898 (D. Or. Feb. 21, 2017), the plaintiff sought over $100 million in damages in a breach of contract and misappropriation of trade secrets case. There, the plaintiff alleged it shared a confidential source code with the defendant during potential acquisition discussions. The plaintiff filed a motion to compel discovery of the defendant's source code, which would reveal the extent to which the defendants incorporated the plaintiff's trade secrets in its own product. The court found that discovery of the defendant's source code was proportional to the needs of the case considering the amount in controversy and justified by the parties' resources. In the case at bar, while we are obviously not talking about a case which is worth $100 million, we are indeed talking about a case where a significant amount of money is potentially at stake. Plaintiff has alleged significant injuries which persist even to this day and significant punitive damages are on the table as to each individual Defendant. Moreover, the burden placed on Defendants is significantly lower than that Vesta Corp, as they

were asked to give up proprietary information to commercial rival. Here, we are only asking the Defendants to spend some time producing relevant information which they themselves are responsible for disorganizing.

With respect to factor 3, the parties' relative access to relevant information, "information asymmetry" is recognized as a recurring issue; that is, one party may have very little discoverable information while the other party may have vast amounts of it that is readily retrievable. The Rules drafters note, "In practice these circumstances often mean that the burden of responding to discovery lies heavier on the party who has more information, and properly so." *See 2015 Advisory Committee Notes*. Such is exactly the case here, where Plaintiff, being incarcerated, has virtually no access to any information whatsoever, while Defendants, being administrators of the WVDCR, have total access to the information requested.[2]

Factor 4, the parties' resources, is seemingly less significant than the other factors. In *Goes Int' AB v. Dodur Ltd., 14-cv05666-LB*, U.S. Dist. LEXIS 4999 (N.D. Cal. Jan. 12, 2017), the court found the plaintiff's discovery request was not an excessive burden despite the fact that defendant was located in China with limited resources. The court held "the defendant's financial wherewithal is not decisive." By comparison, however, in *Elkharwily v. Franciscan Health System, 15-cv-05579-RJB*, 2016 WL 4061575 (W.D. Wash. July 29, 2016), the court ordered defendant to facilitate plaintiff's access to discovery at plaintiff's own expense because it would

---

[2] At this juncture it is necessary to discuss Defendant Woods' claim that, because he is no longer the administrator of the WRJ, he no longer has access to the requested information. Plaintiff finds it strange that Defendant Wood would have access to so much else in the discovery requests germane to the operations of the WRJ, and yet be bereft of access only as to the information regarding prior grievances and disciplinary responses which all other Defendants have also refused to provide. Nevertheless, even if the Court finds that such claims are sufficiently credible to render the Request to Defendant Wood not producible, substantially similar discovery requests have also been provided to the WRJ and to the named correctional officers, and so a ruling as to the propriety of the remaining outstanding objections to production would nevertheless substantially assist in the resolution of these discovery disputes.

be an undue burden to the defendant. There, the defendant objected to production of archived emails because it did not implement an archiving system. In order to produce such documents, the defendant would have had to retrieve, restore, and review backup tapes, which would require 1,400 hours and $157,500 in costs. The court acknowledged this was an undue burden and cost to the defendant. However, because the emails were otherwise discoverable under Rule 26(b)(1), the court permitted plaintiff access to discovery at the plaintiff's own expense.

      As to the fifth factor, the importance of the discovery in resolving the issues, the requested information is absolutely indispensible in resolving Plaintiff's claims against Defendant's Wood, Jividen, the WRJ, and (potentially) Defendant Sandy as well. As discussed above, we simply cannot know the extent of the WVDCR's failure to hold its officers accountable for violations of prisoners' constitutional rights if we are not privy to the track record of grievances filed, and discipline meted out. We need to know whether meritorious grievances were swept under the rug, or whether punishment for serious violations amount to a proverbial slap on the wrist such that the it can be said that excessive force was tolerated as a policy or was negligently disregarded.

      Finally, factor six appears to be somewhat of an aggregation of the others, and to that end Plaintiff would reemphasize how crucial these records are to making his case broader case against the DCR's administrators, making the likely benefit of receiving this information maximal. Meanwhile, the cost is not monetary at all, but is rather extra work for DCR personnel which is only necessary because of DCR's own inadequate record keeping. Moreover, as stated above in footnote 1, Plaintiff would be willing to undertake this work, if permitted, thereby obviating the burden to Defendants.

## C. <u>CONCLUSION</u>

WHEREFORE, for all the reasons stated above, Plaintiff respectfully requests that this Honorable Court GRANT Plaintiffs Motion to Compel.

                                      Respectfully,
                                      Jason Poindexter

By Counsel:

<u>/s/ Christian J. Riddell</u>
Christian J. Riddell (State Bar #12202)
The Riddell Law Group
329 S. Queen Street
Martinsburg, WV 25401
(304)267-3949

**IN THE UNITED STATE DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**JASON POINDEXTER**
      **Plaintiff**

    **v.**
                                                **Case No: 13:18-CV-01511**

**BETSY JIVIDEN, Commissioner of the**
**West Virginia Division of Corrections:**
**Et al.,**
        **Defendants.**

**<u>CERTIFICATE OF GOOD FAITH</u>**

      I, Christian J. Riddell, hereby swear that I have attempted to confer in good faith, both in writing and by telephone, as to resolving the instant discovery dispute without court intervention, but have been unable at this juncture to resolve the same.

                                                <u>/s/Christian J. Riddell</u>
                                                Christian J. Riddell
                                                WV Bar No.: 12202
                                               The Riddell Law Group
                                               329 S. Queen Street
                                               Martinsburg, West Virginia 25401

IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JASON POINDEXTER
      Plaintiff

  v.

Case No: 13:18-CV-01511

BETSY JIVIDEN, Commissioner of the
West Virginia Division of Corrections:
Et al.,
      Defendants.

## CERTIFICATE OF SERVICE

I, Christian J. Riddell, attorney for the Plaintiff in the foregoing action, hereby certify that I have served a true and accurate copy of the foregoing, **Motion To Compel** upon counsel of record by filing the same with the Court via the EMF/ECF filing system this 30th day of March, 2020.

    /s/Christian J. Riddell
    Christian J. Riddell
    WV Bar No.: 12202
    The Riddell Law Group
    329 S. Queen Street
    Martinsburg, West Virginia 25401
    (304) 267-3949