IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**JASON POINDEXTER,**

    **Plaintiff,**

v.                                  Case No. 3:18-cv-01511

**WEST VIRGINIA REGIONAL
JAIL AUTHORITY/DOC; et al.,**

    **Defendants.**

### MEMORANDUM OPINION and ORDER

Pending is Plaintiff's Motion to Compel and for Sanctions. (ECF No. 164). For the reasons that follow, the Court **GRANTS** the motion, in part, to allow Plaintiff to select no more than ten (10) of the grievances that were produced by the West Virginia Division of Corrections and Rehabilitation ("DCR") and notify the DCR which grievances are selected. The DCR is **ORDERED** to provide Plaintiff with the names of the prisoners who filed such grievances within **seven (7) days** of Plaintiff notifying the DCR of the selected grievances. The names should be provided pursuant to the parties' protective order previously entered in this case. (ECF No. 42). The Court **DENIES** the motion, in part, concerning Plaintiff's request to impose sanctions against Defendants, reinstate Plaintiff's prior motion to compel, and order responses to Plaintiff's original discovery requests.

**I.    Relevant Facts and Procedural History**

    *A. Complaint*

Plaintiff alleges in his second amended complaint filed pursuant to 42 U.S.C. § 1983 that correctional officers in the Western Regional Jail ("WRJ") applied excessive

1

force to him on September 17, 2018. (ECF No. 103 at 2-4). In addition to his claims against the individual correctional officers, Plaintiff alleges that Defendants Jeff Sandy, Secretary of the West Virginia Department of Military Affairs and Public Safety; Betsy Jividen, Commissioner of the DCR; and Joseph Wood, Superintendent of the WRJ (collectively "the supervisory defendants") are liable under § 1983 for developing and maintaining policies or customs that caused the deprivation of Plaintiff's Eighth Amendment right against cruel and unusual punishment. (*Id.* at 6). Plaintiff argues that, despite knowing "of the pattern and practice of illegality regularly visited upon prisoners of the WRJ and other regional jails," the supervisory defendants failed to properly investigate the instances of excessive force and supervise, train, and discipline the correctional officers and staff at the WRJ in order to deter such conduct. (*Id.*). He contends that the supervisory defendants operated with a "hands off" approach to acts of excessive force by correctional officers against prisoners, thus encouraging the defendant correctional officers to believe that they could violate Plaintiff's constitutional rights with impunity and with explicit or tacit approval of their supervisors or administrators. (*Id.*). Plaintiff alleged that the supervisory defendants engaged in negligent training, retention, and oversight of the correctional officer defendants.

### B. Motion to Compel

Plaintiff sought in discovery information concerning grievances filed by other inmates against the named correctional officer defendants. Defendants objected to the discovery requests on the basis of relevancy, and Plaintiff filed a motion to compel, arguing that the information requested was "relevant to the question of whether Defendants maintained policies, customs, and patterns which allowed for or encouraged the use of excessive force or, at a minimum, to whether Defendants engaged in negligent

2

training and oversight." (ECF No. 97 at 6-7). Plaintiff argued that it was impossible to prove that Defendant Wood and other administrators developed policies and customs which resulted in the deprivation of Plaintiff's Eighth Amendment right against excessive force without knowing how excessive force claims were handled generally. (*Id.*). Regarding proportionality, Plaintiff stated that the information requested was limited to institutional grievances within five years preceding Plaintiff's injuries until the present day.

In response to the motion to compel, Defendants argued that the discovery requests were overly broad and should be more narrowly tailored. (ECF No. 104 at 2-4). Defendants suggested that they should only produce grievances that exhausted the administrative process. (*Id.* at 5). Finally, Defendants argued that, although it was not dispositive of discoverability, the grievance information would likely be inadmissible at trial as "prior bad acts" evidence. (*Id.*).

The undersigned held two telephonic hearings on Plaintiff's motion to compel. (ECF No. 160 at 1). After considering the parties' arguments, the undersigned ordered the DCR to respond to the discovery requests by identifying the total number of excessive force grievances filed by prisoners in its facilities for the period of 2016 through 2019. (*Id.* at 1-2). Further, the DCR was ordered to identify how many of the identified grievances were substantiated, or where wrongdoing was found to have occurred. (*Id.* at 2). The undersigned denied the related request for copies of the grievances at that time. (*Id.*). However, the undersigned stated that, if Plaintiff determined that the documents were necessary upon receiving the information concerning the number of grievances, the parties should meet and confer in an effort to resolve the matter. (*Id.*). If the matter was not resolved, Plaintiff could file a motion requesting reconsideration of the Court's denial

of the motion to compel regarding the production of documents. (*Id.*).

### C. Renewed Motion to Compel and for Sanctions

On August 18, 2020, Plaintiff filed the instant motion to compel and for sanctions. (ECF No. 164). According to Plaintiff, Defendants agreed during the meet and confer process to produce the excessive force grievances filed against the named correctional officer defendants for the period beginning three years prior to Plaintiff's complaint and concluding one year after Plaintiff filed his complaint. (ECF No. 164 at 2). The production was to include grievances within the foregoing parameters that were filed in the WRJ or any DCR facility. (*Id.*). In early August 2020, Defendants supplemented the discovery responses and asserted, for the first time, an objection that the requests sought private, protected information regarding incarcerated individuals. (*Id.*). Defendants produced the grievances at issue, but redacted the identifying information of the inmates who filed the grievances. (*Id.*).

Plaintiff indicates that Defendants never mentioned a privacy objection during the meet and confer discussions, at prior hearings, or in motion practice. Plaintiff further notes that Defendants did not provide a privilege log or move for a protective order. (*Id* at 3.). He argues that Defendants falsely agreed to provide information that they never fully intended to produce in order to avoid a Court order compelling the production. (*Id.* at 3-4). Plaintiff adds that Defendants' false representation caused needless delay in discovery and forced Plaintiff to expend time and resources seeking the information that Defendants agreed to provide. (*Id.* at 4). Plaintiff notes that the identity of West Virginia prisoners is a matter of public record and is indeed provided on the DCR's website. (*Id.* at 4-5). Plaintiff further contends that the grievances are not protected under any law or standard and would typically be obtainable under the West Virginia Freedom of

4

Information Act. (*Id.* at 5).

Plaintiff argues that Defendant should be sanctioned under Rule 37(b) of the Federal Rules of Civil Procedure. (*Id.*). He acknowledges that the Court never ordered the production of the grievances, but states that the production was not ordered due to Defendants' duplicitous actions, and Defendants should not benefit from their misconduct. (*Id.*). In addition to sanctions, Plaintiff asks the Court to reinstate his prior motion to compel, order Defendants to comply with Plaintiff's original discovery requests, and stay and continue any deadlines in this matter until Defendants provide the requested supplementation. (*Id.* at 6).

In response to Plaintiff's renewed motion, Defendants first point out that, even if Plaintiff's factual assertions were accurate, there is no basis to sanction Defendants because the Court never ordered them to produce the grievances. (ECF No. 167 at 2-3). Defendants note that, consequently, the DCR did not violate a discovery order such as to trigger sanctions under Rule 37. (*Id.* at 3). Regarding the redacted identities of prisoners, Defendants argue that the information is not discoverable and would open the door to extrinsic evidence and testimony that would unduly burden the parties and the Court. (*Id.* at 4). Defendants further state that they produced the grievances in early July, prior to the Court's July 9, 2020 Order; as such, any alleged "delay" in discovery was caused by the failure of Plaintiff's counsel to timely review the grievances. (*Id.* at 4-5). Furthermore, Defendants argue that the identities of the prisoners who submitted the grievances are irrelevant to Plaintiff's claims. (*Id.*). Defendants note that the grievances provide the date and time that they were filed, the substantive content of the grievances in the prisoners' own words, the identity of the staff member who responded to the grievance, and the staff members' responses. (*Id.* at 5-6). Defendants argue that Plaintiff fails to show how the

identities of the prisoners are relevant to show a pattern and practice of certain behaviors by the DCR. (*Id.* at 6). Defendants state that Plaintiff indicated during the meet and confer process that he needed to know the names of the prisoners in order to gather their accounts of the events leading to the grievances and determine if they should be called as witnesses at trial. (*Id.*). Defendants emphasize that Plaintiff has already identified in his discovery responses three individuals who allegedly suffered from Defendants' pattern and practice of excessive force and contend that disclosing the other prisoners' identities will result in mini-trials concerning numerous grievances and the credibility of the prisoners that submitted them. (*Id.* at 6-7).

Plaintiff filed a reply to Defendants' response in opposition. (ECF No. 170). As an initial matter, Plaintiff states that he did not review Defendants' supplementation until approximately two weeks after it was due to ensure that all materials were received, rather than reviewing the supplementation piecemeal. (*Id.* at 1-2). Regarding the discoverability of the inmates' names, Plaintiff argues that Defendants do not offer any legal precedent to support their position that the identities of prisoners who make grievances are private, privileged, or otherwise protected. (*Id.* at 2). Plaintiff asserts that Defendants are just now changing the basis for non-production, stating that the information is not relevant. (*Id.*). According to Plaintiff, the grievances contain minimal information regarding the facts surrounding the incidents that gave rise to the grievances and the manner in which they were investigated or adjudicated. (*Id.* at 2-3). Plaintiff seeks to interview the inmates who submitted the grievances in order to gather additional information and to possibly contradict the official records produced. (*Id.* at 3). Finally, Plaintiff argues that Defendants' contention that revealing the inmates' names would invite extraneous discovery and mini-trials is without merit, and it provides no basis to foreclose the

6

production of discoverable information. (*Id.* at 3-4). Plaintiff maintains that Defendants should be sanctioned. (*Id.* at 5). However, Plaintiff asks that the Court, at a minimum, enlarge the scope of production to all of the grievance information requested in Plaintiff's original motion to compel because Defendants' redaction of the inmates' names allegedly breached the parties' agreement to limit the scope of production. (*Id.* at 6).

## II. Discussion

### A. *Motion to Compel*

Unless otherwise limited by Court order, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Under the 2015 amendments to Rule 26(b)(1), "[t]he question is no longer whether the discovery sought is 'reasonably calculated to lead to the discovery of admissible evidence;' rather, the inquiry is whether the discovery is 'relevant to any party's claim or defense and proportional to the needs of the case.'" *BrickStreet Mut. Ins. Co. v. Chartis Cas. Co.*, No. 5:19-CV-00212, 2020 WL 1965580, at *3 (S.D.W. Va. Apr. 23, 2020).

In this case, DCR produced the excessive force grievances that Plaintiff requested in discovery,[1] but redacted the names of the inmates who filed them. Although relevant

---

[1] Plaintiff states that "the requested grievance information as to Defendant Wood and the Western Regional Jail" was not produced, but he admits that he has not conferred with opposing counsel regarding that issue as required by Local Rule 37.1(b) prior to filing the motion. It appears from Plaintiff's initial motion to compel that Plaintiff served on Defendants Jividen and Wood similar requests for information and documents concerning inmate grievances that were in the possession of the "WRJ/DOC." (ECF No. 97 at 2-5). While it appears from the parties' briefs that the requested grievances were produced, albeit with redactions of the inmates' names, to the extent that any grievances are outstanding, the parties must first confer regarding those issues as required by the local rules before seeking Court intervention.

case law is are not plentiful, district courts within the United States Court of Appeals for the Fourth Circuit, and across the country, have allowed redactions of non-party prisoner names in discovery to protect their privacy and maintain institutional security. *See, e.g., Lamarr v. Jackson*, No. 3:14-CV-32, 2015 WL 2401390, at *2 (N.D.W. Va. May 20, 2015) (ordering defendants to produce the Use of Force Committee reports regarding excessive force at Huttonsville Correctional Center with redaction of prisoner identification); *Scott v. Bennet*, No. 3:18-CV-00583-FDW, 2020 WL 1249386, at *3 (W.D.N.C. Mar. 16, 2020) (ordering defendants to produce incident reports with the prisoners' identifying information redacted and subject to the existing protective order); *Lamon v. Adams*, No. 1:09-CV-00205, 2010 WL 4513405, at *3 (E.D. Cal. Nov. 2, 2010) ("The Court may limit the scope of discovery to protect the privacy interests of litigants and third parties. *See* Federal Rule of Civil Procedure 26(c), *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34–35 (1984)). Plaintiff has not set forth any need for the names of the inmates who filed the grievances, and any such need is outweighed by the inmate's privacy interests. Although the names of the inmates could prove useful to Plaintiff in order to identify potential witnesses, these witnesses did not consent to having their identities disclosed to Plaintiff."); *Roettgen v. Foston*, No. 13CV1101-GPC-BGS, 2016 WL 4555948, at *2 (S.D. Cal. Sept. 1, 2016) (denying Plaintiff's request to reconsider allowing the prisoners' names to be redacted in the discovery production); *Ford v. Cain*, No. CV 15-136-SDD-EWD, 2016 WL 7471633, at *4 (M.D. La. Dec. 27, 2016) ("Defendants shall redact the name and any identifying information of the Angola inmate who submitted the grievance in order to protect the privacy interests of third parties."); *Anderson v. Sposato*, No. CV 11-5663 SJF WDW, 2014 WL 794282, at *5 (E.D.N.Y. Feb. 26, 2014) ("The County may, however, continue to redact the names of inmates that complained of conditions but are not a part

of the litigation[.]").

Plaintiff argues that the names of other prisoners who filed excessive force grievances against the correctional officers are relevant to his claims against the supervisory defendants to establish that such defendants had a pattern and practice of ignoring excessive force incidents against prisoners, and that their failure to disciple, train, and oversee the offending correctional officers led to excessive force against inmates such as Plaintiff. He asserts that the inmates who filed the grievances could provide additional information that is not contained in the grievance forms. The undersigned agrees that the names of the inmates are relevant to Plaintiff's claims against the supervisory defendants, because Plaintiff seeks to use the individuals as potential witnesses and/or to gain additional information concerning how alleged excessive force incidents were handled by the WRJ and other facilities.

However, as Fed. R. Civ. P. 26(b)(1) clearly instructs, the Court must balance relevancy against the proportional needs of the case, taking into account various factors. Given those considerations, and applying the Court's substantial discretion in managing discovery, *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995), the Court finds that Plaintiff may select a limited number of no more than **ten (10)** of the grievances from the documents produced by Defendants, and Defendants are **ORDERED** to provide the names of those inmates to Plaintiff under protective order within **seven (7) days** of Plaintiff notifying Defendants of the selected grievances. By limiting the disclosure to a reasonable number, the concerns of both Plaintiff and Defendants are balanced. The Court does not find any basis to reconsider Plaintiff's original motion to compel or order Defendants to produce all of the grievance information that Plaintiff originally requested, as Plaintiff seeks in his motion.

### B. *Motion for Sanctions*

Regarding Plaintiff's motion for sanctions under Rule 37(b) of the Federal Rules of Civil Procedure, the Court finds that Defendants did not violate a Court order. Defendants were not ordered to produce the inmate grievances, a fact which Plaintiff acknowledges. Therefore, the Court finds that there is no basis to sanction Defendants under Rule 37(b) for violation of a discovery order.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to counsel of record.

**ENTERED:** September 17, 2020

Cheryl A. Eifert
United States Magistrate Judge