## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

JASON POINDEXTER,

        Plaintiff,

v.                                CIVIL ACTION NO. 3:18-1511

WESTERN REGIONAL JAIL;
JEFF SANDY, personally and in his official capacity
as the Secretary of the West Virginia Department of Military Affairs and Public Safety;
BETSY JIVIDEN, personally and in her official capacity
as the Commissioner of the West Virginia Division of Corrections and Rehabilitation;
JOSEPH WOOD, personally and in his official capacity
as Superintendent of the Western Regional Jail;
MAJOR ROBERT BERRY, personally and in his official capacity
as a correctional officer with the West Virginia Division of Corrections and Rehabilitation;
SGT. PAUL DIAMOND, personally and in his official capacity
as a correctional officer with the West Virginia Division of Corrections and Rehabilitation; and
CORRECTIONAL OFFICER STANLEY JARVIS, personally and in his official capacity
as a correctional officer with the West Virginia Division of Correctional and Rehabilitation,

        Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion to Continue (ECF No. 227), Plaintiff's Motion for Adverse Inference Spoliation Instruction (ECF No. 217), and Defendants' Motion for Summary Judgment (ECF No. 204). The motions are now ripe for review. For the following reasons, the Court **DENIES** the Motion to Continue, **DENIES** the Motion for Adverse Inference Instruction, and **GRANTS** the Motion for Summary Judgment.

### I. BACKGROUND

**Factual Background**

Plaintiff's claims arise from three incidents that occurred while he was an inmate at Western Regional Jail. On September 17, 2018, Plaintiff was in St. Mary's Hospital being treated

for acute epileptic seizures. While at the hospital, Plaintiff yelled at the correctional officers to bring him lunch, ripped an IV out of his arm, and caused blood to splatter. According to the St. Mary's nurse tending to Plaintiff, his outburst appeared to be an attempt to coerce Correctional Officer Davis into an altercation. Plaintiff then left the emergency room against medical advice.

Upon return to Western Regional Jail, correctional officers led Plaintiff to the shower area, where officers typically conduct body searches of returning inmates. According to Plaintiff, Defendants Diamond and Jarvis struck him multiple times in the stomach, knee, arm, and head for "embarrass[ing] them at the hospital." Poindexter Dep. 44:2-45:2, ECF No. 210-1. Plaintiff testified that he kept his hands behind his back, dropped to the floor, and curled up in a defensive position. He also stated that he was not searched during this time. Defendants' incident reports indicate that they conducted a routine search in the shower area and do not indicate that they used any force. Unlike the following events, there is no video or audio recording of the shower area.

The second incident occurred in the booking area near Gate 2 and was captured by video and audio recordings. *See* Video Recording, ECF No. 204-6. The footage begins with Plaintiff out of frame, but officers can be heard shouting "stop spitting on me" twice. Defendant Diamond then directs Plaintiff to stop tensing his arm as they walk into the frame. Plaintiff's left arm is only visible for a few frames of the video, but those frames show his arm stretched out behind him with the Diamond's right hand on Plaintiff's upper arm and the Diamond's left hand holding Plaintiff's wrist. Within a few seconds of the three walking into the frame, Diamond strikes Plaintiff with his knee and the two officers take Plaintiff to the ground with his arms stretched out behind his back. Once on the ground, Plaintiff yells that his shoulder is hurt as a third officer approaches from behind and places Plaintiff's wrists in restraints. The officers then lift Plaintiff to his feet and walk him out of the frame.

The third incident occurred minutes later in the medical unit hallway and was also video recorded. The recording depicts Plaintiff sitting in a chair becoming visibly agitated and yelling at an officer who is sitting at a desk just outside of the frame. Although there is no audio recording of this incident, Defendant-Officers' incident reports consistently state that Plaintiff became angry after the officers informed him that his phone privileges would be restricted for 72 hours due to his behavior at the hospital. Plaintiff then stands up from the chair, yells at the officers, and steps toward one of the officers approaching him. The officer gestures toward the chair, appearing to direct Plaintiff to sit down. Plaintiff does not. The officer then places his hands on Plaintiff's upper chest and pushes Plaintiff backwards several feet so that his back is against the wall and the back of his legs are pressed up against the chair.

After Plaintiff sits, the officer continues to stand next to him with his left hand holding Plaintiff's right arm, and his right hand on Plaintiff's left shoulder. Plaintiff continues to move his upper body forward, apparently yelling at another officer out of the frame. A few second later, Plaintiff attempts to jerk away from the officer. The officer places his left hand behind Plaintiff's neck, Plaintiff stands up, and then the officer uses his knee to strike him several times and takes him to the floor. Another officer walks into the frame, helps lift Plaintiff off the floor, and immediately places him back into the chair.

A few minutes later, the video shows officers wheeling an emergency restraint chair into the hallway. The officers move Plaintiff toward the chair and place him in it. Once Plaintiff is sitting in the chair, three officers surround him to apply the restraints while another officer stands behind Plaintiff applying pressure underneath Plaintiff's jaw within his hands. According to Defendants, this is a hypoglossal nerve pressure point technique. Plaintiff's chest raises out of the chair and the officers push his chest back into the chair several times. The officer applying the

pressure point releases Plaintiff after the other officers fully restrained Plaintiff (about three minutes). As the officers wheel Plaintiff out of the frame, Plaintiff is depicted jerking his body back and forth, attempting to release the restraints.

According to Plaintiff, the officers then wheeled him out of the camera frame and the nurse checked his restraints. Plaintiff also claims that, at this point, the officer applied the hypoglossal nerve pressure point technique again. During her deposition, that nurse stated that Plaintiff was agitated and screamed "kill me, kill me please. I want you to," the entire time she was present. Dillon Dep. 15:21-16:12, ECF No. 204-6. Based on these comments, she decided to place Plaintiff on suicide watch. She stated that she did not remember Plaintiff complaining that his shoulder hurt, and if he had, she would have made a note of it in her report. In the following days, Defendants admitted Plaintiff to the hospital again for seizures and about a week later Plaintiff was transferred to the Mount Olive Correctional Complex.

Following these events, officers Diamond, Jarvis, and Davis, drafted incident reports. To the extent that their reports describe the video recorded incidents above, those details are consistent with the footage. Defendant Jarvis also completed a rule violation report charging Plaintiff with assault and battery, threats, obscene language, obstructing, compromising employees, and refusing an order. WRJ found Plaintiff guilty of obstructing, compromising employees, and refusing an order, and the officers dropped the assault and battery charge. Plaintiff claims that the officers dropped the charges after a correctional officer stated at the hearing that the allegation that Plaintiff took a "fighting stance" at the hospital was not true. [1]

---

[1] Plaintiff's Response in Opposition to the Motion for Summary Judgment requests leave of Court to request recordings of Plaintiff's disciplinary proceeding. However, Plaintiff has failed to show good cause for his failure to request this recording before the discovery deadline, which lapsed on October 30, 2020. Am. Sched. Order, ECF No. 168.

On August 24, 2019, Plaintiff received a letter from his defense counsel, Timothy Rosinsky, stating that another attorney received recordings of Plaintiff's calls from the jail with Rosinsky. Rosinsky was later deposed and stated that he could not think a way that the recordings were used against Plaintiff in his criminal case. He stated that the recordings in no way affected his representation of Plaintiff.

**Procedural Background**

Plaintiff filed this action *pro se* on December 13, 2018. Since then, Plaintiff retained counsel and has filed two amended complaints. The Second Amended Complaint states six causes of action. Counts 1 and 2 allege that the Defendant-Officers' use of force violated Plaintiff's Eighth Amendment rights and constituted assault and battery. Count 3 alleges that Defendants Sandy, Jividen, and Wood, (collectively "Defendant-Administrators") and Western Regional Jail ("WRJ") created a policy or practice that enabled the individual officers' excessive force in violation of the Eighth Amendment. Count 4 alleges that all Defendants violated Plaintiff's Sixth Amendment rights by monitoring Plaintiff's calls. Count 5 alleges Negligent Training, Oversight, and Retention by Defendant-Administrators and WRJ based on their failure to stop excessive force used against inmates. And Count 6 alleges that the Defendants' use of force, policies enabling that force, and denial of proper medical care violate Plaintiff's right to be free from cruel and unusual punishment under the West Virginia Constitution.

On January 4, 2021, Defendant moved for summary judgment on all six counts, arguing that Plaintiff has not produced sufficient evidence to support his claims despite having extra time to conduct discovery. Plaintiff argues in his Response in Opposition, that the Defendants destroyed video and audio evidence that would have supported his claims and subsequently filed a Motion for Adverse Inference Spoliation Instruction.

On February 26, 2021 (one business day before the pretrial conference), Plaintiff filed a "Motion to Continue Trial," arguing that there is good cause for a continuance because Defendant Commissioner Jividen, through her Healthcare Director, recently approved his request to get an MRI on his shoulder.

The Court held a pretrial conference on the following Monday and heard argument on Defendants' Motion for Summary Judgment and Plaintiff's Motion to Continue. During that hearing, the Court granted in part Defendants' Motion for Summary Judgment as to the Eleventh Amendment and Sixth Amendment claims, recognizing that this Opinion would follow. The Court held all other claims in abeyance pending the resolution of Plaintiff's Motion to Continue. Now that the Motion to Continue is ripe, the Court will address the Parties' arguments below. The Court will then consider Plaintiff's spoliation claim and Defendants' Motion for Summary Judgment.

## II. MOTION TO CONTINUE

Plaintiff alleges that he suffered a torn rotator cuff in his shoulder after Defendant-Officers took him to the ground outside of Gate 2. Plaintiff has failed to produce evidence to prove this injury but attributes this failure to the Department of Corrections' refusal to approve his request for an MRI. According to Plaintiff's Motion, Plaintiff filed a medical care grievance requesting to "see an [Orthopedic] Doctor and get an MRI to figure out what is wrong and how to fix it," and that request was denied on the grounds that Plaintiff's shoulder had already been evaluated twice. ECF No. 227. Plaintiff then appealed the denial. In late January, the Department of Corrections granted his request. Plaintiff argued that this reversal provides good cause for a continuance because he would be receiving an MRI in the near future.

Defendants timely responded in opposition to the Motion to Continue on March 15, 2021 (ECF No. 233). Plaintiff did not file a reply and instead filed a status report (ECF No. 232). Both

the Response in Opposition and the Status Report conclude that Plaintiff's initial Motion to Continue was mistaken; an MRI had not been ordered or scheduled. Rather, the Department of Corrections only ordered an evaluation of Plaintiff's shoulder, which might have led to further diagnostic studies or treatment. Defendant submitted further evidence that Plaintiff was scheduled to see an outside provider on January 26, 2021 but he refused to attend that evaluation. In light of this evidence and Plaintiff's lack of response, the Court finds that Plaintiff's request is not supported by good cause. Therefore, the Court **DENIES** Plaintiff's Motion to Continue.

### III. MOTION FOR ADVERSE INFERENCE SPOLIATION INSTRUCTION

Next, Plaintiff argues that an adverse inference instruction is warranted in this case because Defendants failed to maintain material video and audio footage. Plaintiff also requests an adverse inference on the ground that Defendants refused to conduct an MRI on Plaintiff's shoulder while he was in their custody. Plaintiff clarified these requests in his Reply, stating that he only requests an adverse inference "if [the jury] finds, by preponderance of the evidence, that Defendant intentionally and willfully destroyed or caused the evidence to be destroyed." Pl.'s Reply 4, ECF No. 224. This is distinguishable from the typical adverse inference instruction under Fed. R. Civ. P. 37(e)(2), which provides that the court may give the jury an adverse inference instruction upon a factual finding of spoliation by the court.

Although unusual, the Fourth Circuit has upheld an instruction similar to the one Plaintiff requests in at least one case. In *Vodusek v. Bayliner Marine Corp.*, the defendant pleaded spoliation as an affirmative defense and presented related evidence to the jury to decide whether the plaintiff improperly destroyed evidence. 71 F.3d 148, 155 (4th Cir. 1995). The plaintiff challenged the district court's instruction related to this claim, which stated that the jury could "assume that evidence made unavailable to the defendants by acts of plaintiff's counsel or agents . . . would have

been unfavorable to the plaintiff's theory in the case," if it found that plaintiff caused the destruction or loss of relevant evidence. *Id.*

The Fourth Circuit started its analysis by noting that spoliation is an evidentiary rule and not a claim or affirmative defense. The court then reviewed the instruction for abuse of discretion and upheld the district court's instructions as "appropriate guidelines for evaluating the evidence." *Id.* at 157. It did not articulate the circumstances under which a jury should hear a claim of spoliation instead of the court, and instead simply noted that the district court "acted within its discretion in permitting the jury to draw an adverse inference if it found that Vodusek or her agents caused destruction or loss of relevant evidence." *Id.*

Here, the Court declines to submit this question to the jury. Although the Court finds that a jury may be the proper fact-finder for a spoliation issue in some instances, a party must still present a plausible claim that the opposing party "acted with the intent to deprive another party of the information's use in the litigation." *See* Fed. R. Civ. P. 37(e)(2). Plaintiff has not done so here.

In the Fourth Circuit, the following must be shown to warrant adverse inference instructions:

> (1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009) (quoting *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 101 (D. Md. 2003)).

Neither of Plaintiff's two arguments raise a plausible spoliation claim. First, Plaintiff claims that Defendants failed to maintain material video of the area immediately outside the

showers and audio footage of the medical hall incident. However, Defendant has submitted an affidavit from Major Christopher Fleming, an officer at WRJ, indicating that the WRJ did not preserve the surveillance footage outside of the shower area because neither Plaintiff nor the officers reported use of force in that area. Fleming also stated that there is no audio surveillance in the medical hall for privacy reasons. Plaintiff has not produced any evidence to the contrary. Therefore, the Court finds that there is not a sufficient factual basis for which to submit this question to the jury.

Second, Plaintiff's MRI-based claim improperly asks for an adverse inference based on evidence that never existed. Plaintiff has repeatedly complained of Defendants' refusal to approve an MRI for Plaintiff's shoulder and by doing so he has admitted that such evidence was never under the Defendants' custody. Therefore, this is an improper spoliation claim. The Court **DENIES** Plaintiff's Motion for an Adverse Inference Jury Instruction.

## IV. MOTION FOR SUMMARY JUDGMENT

### Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)-(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247 (1986). A fact is material if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248. A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477

U.S. at 322-23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. If the nonmoving party makes this showing, summary judgment is not appropriate. *Id.*, at 250.

**Sovereign Immunity**

Defendant first argues that the Western Regional Jail ("WRJ") is entitled to summary judgment under the Eleventh Amendment. Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989). It is well established that the West Virginia Regional Jail and Correctional Facility Authority—and by extension WRJ—is an agency of the State of West Virginia and is not a "person" for purposes of a section 1983 action seeking money damages. *See Roach v. Burke*, 825 F.Supp. 116, 118 (N.D.W.Va.1993) (holding that the WVRJA is not a person amenable to suit under section 1983). Although there are three narrow exceptions to this rule, *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012), Plaintiff has not identified any applicable exception here. Therefore, the Court **GRANTS** summary judgment for WRJ.

**Count 1: Excessive Force, in Violation of the Eighth Amendment to the U.S. Constitution and Article 3-5 of the West Virginia Constitution, and Assault and Battery**

The Eighth Amendment prohibits cruel and unusual punishment against inmates, including excessive force. An inmate's claim of excessive force involves objective and subjective

components. Under the objective component, the Court must consider the nature of the force employed, and whether that force "was sufficiently serious to establish a cause of action." *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). Any force that is "nontrivial" or more than "de minimis" is sufficient for Eighth Amendment excessive force claims. *Id.*, at 107 (noting that deploying a taser is serious use of force); *Rios v. Veale*, 648 F. App'x 369, 371 (4th Cir. 2016) (holding that officer causing trap door to close on Plaintiff's arm was not de minimis).

The more demanding part of the test is the subjective component, which asks whether the officers acted with a wantonness in the infliction of pain. *Dean v. Jones*, 984 F.3d 295 (4th Cir. 2021) (citing *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008); and *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). This issue turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (internal quotation marks omitted). The Fourth Circuit has held that officers employ force in "good faith" when they are motivated by an "immediate risk[] to physical safety" or threat to prison order. *Brooks*, 924 F.3d at 113. But officers cross the line into an impermissible motive when they inflict pain to punish or retaliate against an inmate for his prior conduct. *Id.*; *see Boone v. Stallings*, 583 F. App'x 174, 177 (4th Cir. 2014) ("[T]he Eighth Amendment does not permit a correctional officer to respond to a misbehaving inmate in kind."). The use of force on an inmate who is "restrained and compliant and posing no physical threat" raises the specter of such an impermissible motive. *Thompson v. Virginia*, 878 F.3d 89, 102 (4th Cir. 2017).

On summary judgment, the subjective component boils down to whether a reasonable jury could find that an officer acted with malice by applying force punitively and "for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (internal quotation marks omitted). Because direct evidence of motive or intent may be hard to come by, the Supreme Court in *Whitley v. Albers* set

-11-

out four factors from which "we may infer the existence of th[e] subjective state of mind required for an Eighth Amendment violation." *Brooks*, 924 F.3d at 116 (alteration in original) (internal quotation marks omitted). Those factors are:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

*Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 321). If a reasonable jury could find, based on inferences drawn under the *Whitley* factors or other evidence, that correctional officers used force maliciously to punish or retaliate against an inmate, then summary judgment is not appropriate. *See Brooks*, 924 F.3d at 116. [2]

    *i.*   *Shower Incident*

As noted above, Plaintiff has testified in a deposition that he was taken into the shower area and beaten as punishment for his behavior at the hospital. Defendant argues that the Court should not credit Plaintiff's testimony because it is undermined by the video footage of him in the booking area minutes later. In support of this argument, Defendants cite *Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008), which held that where "the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape." Defendants argue that the footage contradicts Plaintiff's version of the facts because it shows Plaintiff walking normally and without any visible ailments

---

[2] The Court will apply the same analysis to Plaintiff's assault, battery, and West Virginia Constitution Article 3-5 claims. *See Lowe v. Ballard*, No. 2:17-cv-03929, 2020 U.S. Dist. LEXIS 164079, at *14-15 (S.D. W. Va. Sep. 9, 2020) (noting that an officer is "privileged" to engage in otherwise tortious conduct to the extent that it is constitutional); *Harrah v. Leverette*, 165 S.E.2d 322, 330-31 (W. Va. 1980) ("We hold that Article III, § 5 of the West Virginia Constitution, prohibits state prison administrators and correctional officers from using physical force on inmates, absent imminent and present danger of harm to others, themselves or state property."); *see also Schoonover v. Clay Cty. Sheriff's Dep't*, Civil Action No. 2:19-cv-00386, 2020 U.S. Dist. LEXIS 90484, at *22 (S.D. W. Va. May 21, 2020).

moments after the alleged beating. The Court agrees. Based on Plaintiff's version of the facts, he was severely kicked, punched, and beaten by at least three officers in the shower area. One would expect the victim of such a beating to suffer some visible injuries. However, the video evidence indisputably shows that Plaintiff was not visibly injured in the minutes immediately following his alleged beating. Consequently, just as in *Iko*, the Court cannot give weight to Plaintiff's testimony because it is contradicted by video evidence. The Court **GRANTS** summary judgment of this claim.

     *ii. Booking Area Incident*

  Next, Plaintiff claims that the officers violated the Eighth Amendment by striking him near the booking area and taking him to the ground without cause. Plaintiff claims that the officer's force caused an injury in his left shoulder, which inflicted pain and caused loss of movement.

  Defendant first argues that this claim should be dismissed because Plaintiff's de minimis injury supports an inference that the force was not excessive. This argument must be rejected. Even if the Court assumes that Plaintiff's injuries were de minimis, the Fourth Circuit has expressly held that courts may not reject an excessive force claim "based on some arbitrary quantity of injury." *Heyward v. Price*, 785 F. App'x 109, 111 (4th Cir. 2019) (quoting *Wilkins*, 559 U.S. at 39) (internal quotation marks omitted). Although the absence of serious injury may "provide some indication of the amount of force applied," the Court cannot give it "decisive weight." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). The Supreme Court has been careful to note: "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id*. (citing *Hudson*, 503 U.S. at 9). Therefore, even if the Court assumes that Plaintiff did not suffer serious injuries, it cannot ignore Plaintiff's testimony that he was beaten and kicked by the officers.

  On the other hand, the Court finds Defendants' second argument—that no reasonable juror

could find that the officers acted with malice based on the video footage—persuasive. The recordings plainly establish that the officers warned Plaintiff not to resist them by tensing his arms. After two or more warnings, the officers used force to bind Plaintiff's wrists, including taking him to the ground. After they secured Plaintiff, they immediately lifted him and continued walking toward the medical unit. This indicates that Defendants were only using the amount of force that was necessary to restrain Plaintiff and were not motivated by malice. Therefore, the Court **GRANTS** summary judgment as to this claim.

    iii.    *Medical Hall Incident*

Finally, Plaintiff claims that the officers are liable under the Eighth Amendment for excessive force used in the medical hall. As described above, this force included shoving, taking Plaintiff to the ground, and the use of pressure points. Defendant again argues that there is no evidence of malicious intent because Plaintiff's resistance rendered force necessary and the amount of force used was proportional to that need.

Based on the video footage, the Court finds that the Plaintiff has failed to raise a dispute of material fact as to this claim. As detailed above, the video footage clearly depicts Plaintiff yelling and acting aggressively towards the officers. After Plaintiff stood up from his seat and approached one officer, he ignored the officer's gesture to take a seat, and the officer did what other reasonable officers would: he pushed Plaintiff toward the seat. The Court is likewise satisfied that Plaintiff does not have a viable claim based on Diamond's take down minutes later. As described above, immediately before Diamond took Plaintiff to the ground, Plaintiff was yelling and jerking away from Diamond's hold. No reasonable jury could find that Plaintiff was not resisting Diamond and that Diamond was not justified in taking further action to restrain Plaintiff.

Finally, the Court finds that Plaintiff's claim arising from Diamond's use of the pressure

-14-

point is not supported by the evidence. The video footage shows Diamond placing his hands near Plaintiff's jaw line while the other officers are applying the chair's restraints to Plaintiff's arms and legs. Diamond removes his hands once the officers secured Plaintiff. Although Plaintiff testified that Diamond re-applied pressure to Plaintiff's jaw after he was fully restrained and out of the camera's view, the video and testimonial evidence demonstrates that this force was reasonable. The video shows Plaintiff yelling and thrusting his head back and forth just before he alleges that Diamond reapplied the pressure point. The nurse's testimony also shows that Plaintiff was "screaming" while she was present and attempting to examine him. Given Plaintiff's behavior, a reasonable officer would have determined that it was necessary to further restrain him so that the nurse could approve of the restraints and check Plaintiff's vitals. Therefore, the Court **GRANTS** Defendants' Motion as to this claim.

### Count 2: Deliberate Indifference by Defendant-Officers

Plaintiff alleges that the Defendant-Officers provided inadequate medical care and acted with deliberate indifference to his pre-existing medical condition in violation of the Eighth Amendment and Article 3-5 of the West Virginia Constitution. To establish this claim, Plaintiff must demonstrate Defendants were deliberately indifferent to his serious medical needs. *Lyles v. Stirling*, No. 20-6421, 2021 U.S. App. LEXIS 3957, at *3-5 (4th Cir. Feb. 11, 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

This claim also has an objective and subjective component. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). For the objective prong, a plaintiff must establish he had a serious medical need, defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (internal quotation marks

omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson*, 775 F.3d at 178 (internal quotation marks omitted). Mere negligence or medical malpractice does not constitute deliberate indifference. *Estelle*, 429 U.S. at 106; *Jackson*, 775 F.3d at 178. Moreover, an inmate's mere disagreement regarding the proper course of treatment provides no basis for relief. *Jackson*, 775 F.3d at 178. "[I]t is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id*.

Here, Plaintiff claims that he was denied medical care immediately after the officers caused his shoulder injury and that the officers were deliberately indifferent to his epilepsy diagnosis. Plaintiff's first claim must be dismissed because he has failed to produce evidence that Defendant-Officers knew that his shoulder was injured that day or that it required medical attention. To the contrary, Nurse Dillon testified that she examined Plaintiff while he was in the restraint chair and documented the examination in Plaintiff's medical chart: "Patient brought to medical post officer assistance call and had to be placed in restraint chair. All vitals within normal limits." Dillon Dep., ECF No. 204-6. When questioned under oath about her examination, she stated that she did not believe Plaintiff complained about his shoulder during that examination because if he had, she would have made a note of it in her chart. She also stated that she did not observe any visible injuries but noted that Plaintiff continued to have outbursts for several minutes. The next day, Nurse Morales examined Plaintiff and stated that he had no issues or distress.

Plaintiff's second claim fails for similar reasons. Plaintiff has failed to explain how his epilepsy created a specific risk of harm or how Defendant-Officers deliberately disregarded that

risk when interacting with Plaintiff. Without such an explanation and evidence to support it, the Court cannot allow Plaintiff's claim to proceed. Therefore, the Court **GRANTS** Defendants' Motion as to this Count.

### Count 3: Deliberate Indifference by Defendant-Administrators

Under Count Three, Plaintiff claims that Defendant-Administrators violated the Fourth Amendment by (1) "operat[ing] with a 'hands off' policy or custom with regard to acts of excessive force by correctional officers and staff against [inmates];" and (2) "establish[ing] policies and customs which manifested deliberate indifference towards the administration of appropriate medical care for inmates." SAC ¶ 26, ECF No. 103.

However, Plaintiff has failed to produce any evidence of a policy or practice. In his Response in Opposition, Plaintiff's arguments only relate to allegations about Plaintiff's treatment on September 17, 2018. It is well settled that "isolated incidents" of allegedly unconstitutional conduct by employees are not sufficient to establish a custom or practice for section 1983 purposes. *See Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003). Under Plaintiff's excessive force claim, he argues that the claim should proceed to trial because Defendants failed to videotape Plaintiff in the restraint chair in violation of WVRJA's policy on Forced Cell Entry. Defs.' Resp. to Pl.'s Interrog. No. 2, ECF No. 210-2. However, this policy is inapplicable to the facts alleged: Defendants never conducted a forced entry into Plaintiff's cell. Plaintiff's inadequate medical care claim fails for the same reason; he has only presented evidence that he was denied an MRI, which can only be construed as an isolated incident and not an unconstitutional policy or practice.

To the extent that Plaintiff now seeks to advance independent claims that do not relate to Defendants' policies or practices, the Court has no occasion to consider these claims because that is not what he alleged in the Second Amended Complaint. *See Brown v. Plata*, 563 U.S. 493, 505

n.3 (2011) ("Because plaintiffs do not base their case on deficiencies in care provided on any one occasion, this Court has no occasion to consider whether these instances of delay—or any other particular deficiency in medical care complained of by the plaintiffs—would violate the Constitution under *Estelle v. Gamble* if considered in isolation.") (internal citation omitted). Therefore, the Court must **GRANT** Defendants' Motion as to Count 3.

### Count 4: Sixth Amendment Violation

Under Count 4, Plaintiff claims that Defendants monitored his calls with Rosinsky in violation of the Sixth Amendment. As a criminal defendant, Plaintiff is correct that he had a right to be free from government intrusion of his attorney-client relationship. However, it is well established that he must demonstrate that the invasion caused him prejudice to advance this claim. *See United States v. Chavez*, 902 F.2d 259, 266 (4th Cir. 1990) (citations omitted); *United States v. Allen*, 491 F.3d 178, 192 (4th Cir. 2007) (quoting *Chavez*).

Here, there is simply no evidence that the recordings affected Rosinsky's representation of Plaintiff. When asked if it was true that "nothing in the phone calls negatively impacted [Rosinsky's] ability to defend [Plaintiff]," Rosinsky answered "That's correct." Plaintiff does not offer any evidence to the contrary. Therefore, the Court **GRANTS** summary judgment as to Count 4.

### Count 5: Negligent Training, Oversight, and Retention

Plaintiff's Count 5 alleges that Defendant-Administrators negligently trained, oversaw, and retained officers. Defendants move to dismiss this claim, arguing that these Defendants are entitled to qualified immunity. Plaintiff did not address this argument in his response and seems to have abandoned this claim altogether. He has not presented any evidence to support this claim, nor has he offered legal support to rebut Defendants' qualified immunity claim. He has also failed to

identify any evidence to support his negligence claim, articulate Defendants' duty or how they breached that duty with respect to training, oversight, and retention. Given Plaintiff's apparent abandonment of this claim, the Court **GRANTS** the Motion and dismisses Count 5.

### Count 6: West Virginia Constitution

Plaintiff alleges that the Defendants' use of force, policies enabling that force, and denial of proper medical care violated Plaintiff's right to be free from cruel and unusual punishment under Article Three, Section Five of the West Virginia Constitution. Plaintiff's state law claims rely on the same arguments above, each of which fails to raise a genuine issue of material fact. Accordingly, the Court **GRANTS** the Motion as to Count 6.

### V. CONCLUSION

Based on the foregoing, Plaintiff's Motion to Continue (ECF No. 227) and Motion for Adverse Inference Spoliation Instruction (ECF No. 217) are **DENIED**. Defendants' Motion for Summary Judgment (ECF No. 204) is **GRANTED,** and the case is **DISMISSED**.

All other outstanding motions (ECF Nos. 215, 222, 226) are **DENIED AS MOOT**.

The Clerk is **DIRECTED** to send a copy of this opinion to counsel of record and any unrepresented parties.

ENTER:        March 26, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE